PLAINTIFF'S EXHIBIT
1

# SETTLEMENT AGREEMENT AND FULL AND FINAL RELEASE OF CLAIMS

This Settlement Agreement and Full and Final Release of Claims (the "Agreement") is made and entered into this 6th day of September, 2019, by and between Stephen Wiegmann (the "Plaintiff") on the one side, and Byron's Subs, Inc. ("Byron's"), Joseph Carolan ("Carolan") and Kenneth Dilda ("Dilda") (collectively, the "Defendants"), on the other side. Plaintiff and Defendants are collectively referred to as the "Parties."

**WHEREAS**, Plaintiff alleges that he worked as an employee at Byron's and Plaintiff contended that he was owed unpaid minimum and overtime wages;

**WHEREAS**, Plaintiff has pending against Defendants an action in the United States District Court for the District of Maryland, styled *Stephen Wiegmann v. Byron's Subs, Inc., et al.*, Case No. 1:19-cv-00315-JMC (the "Lawsuit"), alleging unpaid minimum wages and overtime wages under the Fair Labor Standards Act (FLSA), along with state supplemental claims;

**WHEREAS**, Defendants deny Plaintiff's allegations, deny any wrongdoing, and maintain that Plaintiff has been paid all wages due, and have denied any and all allegations of wrongdoing asserted by Plaintiff;

**WHEREAS**, without admission of liability, the Parties collectively desire to settle, fully and finally, all differences between them arising from or in any way connected with the Parties' previous working relationship with each other;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises contained in this Agreement and other good and valuable consideration, and to avoid unnecessary and/or expensive litigation, it is hereby agreed by and between the Parties as follows:

1. **CONSIDERATION.** In consideration of Plaintiff's decision to enter into and execute this Agreement, Defendants shall agree to re-employ Plaintiff under the terms of an employment agreement negotiated by the parties and attached hereto as Exhibit 1. The employment agreement shall grant Plaintiff rights and protections to which he would not otherwise be entitled. Upon execution, this agreement shall act to settle all claims involving Plaintiff's Lawsuit, including but not limited to, claims for unpaid minimum wages and overtime wages and statutory/liquidated damages. Defendants shall further agree to pay Plaintiff, through his counsel, the total sum of Fourteen Thousand US. Dollars and 00/100 Cents ($14,000.00), to settle claims for attorneys' fees and costs.

2. **PAYMENTS.** Defendants agree to pay the above settlement amount subject to the following terms and payable as follows:

    a. Within five (5) days of approval of this Agreement by the U.S. District Court, Defendants shall execute the employment agreement negotiated by the parties.

    b. Defendants shall pay the total gross sum of Fourteen Thousand US Dollars and 00/100 Cents ($14,000.00) to Hoffman Employment Law, LLC in full settlement of all attorneys' fees, costs, and expenses arising out of this case (to include all those fees

and costs and expenses incurred by counsel). The Parties stipulate the Plaintiff's fees and expenses are fair and reasonable. The full payment of attorneys' fees shall be made within four (4) months after approval of this Agreement by the U.S. District Court. Defendants shall make payments to Plaintiff's counsel in reasonable installments beginning immediately after approval of this Agreement by the U.S. District Court. These payments of attorneys' fees shall be made payable to Plaintiff's counsel, "Hoffman Employment Law, LLC" and delivered to Hoffman Employment Law, LLC at 600 Jefferson Plaza, Ste. 204, Rockville, Maryland 20852.

c. Attorneys' fees and costs paid pursuant to this Settlement Agreement shall be paid without withholding and shall only be reported to the IRS under Hoffman Employment Law, LLC's Federal Employer Identification Number, on an IRS Form 1099, box 14, for the year in which it was paid.

d. At the time Plaintiff executes this Settlement Agreement, Hoffman Employment Law, LLC shall provide Defendants' counsel, Gregory Currey, Esq., an executed IRS Form W-9 which shall accurately provide their taxpayer identification number.

3. **ADMISSION**: Plaintiff agrees that Defendants have paid all sums earned by and owed to them, including, but not limited to, all salary, tips, bonuses, wages (*including minimum wages*), overtime, business expenses, allowances, vacation pay, holiday pay, sick pay and other benefits and perquisites as a result of his alleged employment with Defendants, and further acknowledge that the payments under Section 2 are in full payment of anything of value to which they would be entitled under any policy, plan or procedure of Defendants. Plaintiff also expressly waives any right or claim that he may have or may assert to employment or reinstatement to employment, or to payment for salary, back pay, front pay, interest, bonuses, damages, accrued vacation, accrued sick leave, accrued personal days, medical, dental, optical or hospitalization benefits, pension plan contributions, thrift savings plan contributions or benefits, education benefits, life insurance benefits, overtime, compensatory time, outplacement, severance pay, attorneys' fees, disbursements and/or costs.

4. **APPROVAL BY COURT / DISMISSAL WITH PREJUDICE**: Upon full execution of this Agreement, Plaintiff's counsel shall file with the Court a Joint Motion to Approve the Settlement Agreement (the "Motion"). The Motion shall attach a copy of this Agreement and shall request that the Court approve this Agreement and dismiss this case with prejudice. The Parties agree that this Agreement is contingent upon the U.S. District Court for the District of Maryland's approval of all the material terms of the Agreement and the granting of the Motion, and should the U.S. District Court for the District of Maryland not approve all the material terms of this Agreement, the Agreement will be null and void and no legal effect. No party shall have the right to appeal any decision, order, or judgment entered in this Lawsuit. The parties agree that they will cooperate fully and take any steps necessary in seeking the necessary Court's approval of this Agreement. In the event that the Court does not approve this Agreement or approves it subject to conditions or modifications which are not acceptable to both parties, the Parties shall attempt to negotiate in good faith in order to modify the Agreement in a form acceptable to both the parties and the Court.

Settlement and Full and Final Release of Claims

5. **FULL AND FINAL RELEASE.** Except for Defendants' obligations under this Agreement, in consideration for the terms of employment being provided to Plaintiff and payments to Plaintiff's counsel by Defendants, Plaintiff, for himself, and for his attorneys, heirs, executors, administrators, successors and assigns, fully, finally and forever waive, release and discharge the Defendants, including, as applicable, all Defendants' heirs, executors, administrators, parent, subsidiary and/or any alleged affiliated companies or companies alleged to form a single enterprise or joint employer, as well as their successors, assigns, officers, owners, directors, supervisors, members (including but not limited to Carolan and Dilda), agents, representatives, attorneys, insurers, and employees (all of whom are referred to throughout this Agreement as "the Releasees"), of and from all claims, demands, actions, causes of action, suits, damages, losses, and expenses, of any and every nature whatsoever, known or unknown, as a result of actions or omissions occurring from the beginning of time through the effective date of this Agreement. Without limiting the generality of the foregoing, specifically included in this waiver and release are, among other things, any and all claims of alleged failures to pay wages (including the minimum wage) and failures to pay overtime brought under: the Fair Labor Standards Act; the Maryland Wage and Hour Law; and the Maryland Wage Payment Collection Law; or any other federal, state or local laws or regulations prohibiting the non-payment of wages and overtime, the existence of which is specifically denied by the Defendants. This Agreement does not bar either party from bringing an action to enforce the terms of this Agreement in the event of a breach and/or default.

    a.    This Release further includes any and all claims for damages, penalties, attorneys' fees or costs relating to or in any way connected with the matters referred to herein, whether or not now known or suspected to exist, and whether or not specifically or particularly described or referred to herein.

    b.    Plaintiff expressly waives any right to assert hereafter that any claim has, through ignorance, oversight or error, been omitted from the terms of this Agreement.

    c.    Plaintiff represents that he has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any claim, whether known or unknown, or any portion thereof or interest therein, which he had, has or may have against Releasees.

    d.    Plaintiff acknowledges that while he is waiving a broad range of claims, he has not asserted and do not assert any claims of sexual harassment or abuse; consequently, no portion of the settlement agreement referenced herein relates to such conduct.

6. **RIGHT TO FILE A CHARGE/COMPLAINT OR PARTICIPATE IN GOVERNMENT INVESTIGATION**: Nothing contained anywhere in this Agreement, and no obligation set forth anywhere in this Agreement, including, but not limited to, the Full and Final Release obligation (¶ 5), is intended to, or will, preclude Plaintiff from filing any charge or complaint with any government agency, including the Equal Employment Opportunity Commission or National Labor Relations Board, or participating in, or cooperating with, any lawful government investigation, or Defendants from defending against same. The initiation of a charge or complaint with a government agency, and/or the participation in, or cooperation with, or defense of, a government investigation shall not be considered a breach of any obligation otherwise set forth in this Agreement. However, by signing this agreement, Plaintiff agrees and acknowledges that he is waiving and releasing any right to receive

further or additional monetary relief or individualized equitable relief. The consideration provided in this Agreement, as set forth above, shall constitute the full extent of any individual relief to which Plaintiff is entitled regarding anything occurring on or before the date on which he signs this Agreement, including anything regarding his alleged employment with the Defendants and/or the termination of that relationship.

7. **NO OTHER CLAIMS.** Plaintiff represents and warrant that Plaintiff has not filed, nor assigned to others the right to file, nor are there currently pending, any complaints or lawsuits against the Defendants (or any Releasee) with any court or any administrative body other than the Lawsuit, and except as stated in Section 6 above, Plaintiff hereby promises that Plaintiff will not file, or assign to others the right to file, or make any further claims against the Defendants and/or any of the Releasees, on behalf of themselves or others, at any time for actions taken up to and including the date Plaintiff executes this Agreement. Plaintiff waives all collective and/or class allegations, and if filed, agree to dismiss same with prejudice, and neither Plaintiff, nor any of his attorneys, shall amend this Lawsuit or otherwise file additional pleadings, motions or papers, other than those pleadings, motions and/or papers necessary to seek approval of this Agreement or engage in enforcement proceedings.

8. **NON-ADMISSION OF LIABILITY OR WRONGFUL CONDUCT.** This Agreement shall not be construed as an admission by the Defendants of any liability or acts of wrongdoing, nor shall it be considered to be evidence of such liability or wrongdoing. Defendants do not admit, and specifically deny, any liability to Plaintiff and any wrongdoing or violation of any law, statute, regulation, agreement or policy, and Defendants are entering into this Agreement and providing the payments and benefits set forth herein solely for the purpose of avoiding the burdens and expenses of further litigation. The Parties acknowledge and agree that no judgment has been entered as to any findings of liability or wrongdoing of any kind have been made by any court of law or administrative agency.

9. **GOVERNING LAW/VENUE.** This Agreement is to be interpreted, enforced, and governed by and under the laws of Maryland, without giving effect to the conflict of laws rules and principles thereof. The Parties agree that this Agreement is made within Baltimore County, Maryland, and the venue shall be within Baltimore County, Maryland for purposes of resolving any and all disputes under this Agreement, other than the failure of Defendants to execute the negotiated employment agreement or make payments under paragraph 2, which may be enforced in the United States District Court for the District of Maryland subject to the continuing jurisdiction of the United States District Court for the District of Maryland, as provided in paragraph 16, below.

10. **SOLE AND ENTIRE AGREEMENT.** This Agreement sets forth the entire agreement between the Parties pertaining to the subject matter hereof. Any prior agreements between or directly involving the Parties to the Agreement are superseded by the terms of this Agreement and thus are rendered null and void.

11. **NO OTHER PROMISES.** Plaintiff affirms that the only consideration for Plaintiff signing this Agreement is that set forth in Paragraphs 1 and 2 and that no other promise or agreement of any kind has been made to or with Plaintiff by any person or entity to persuade or cause Plaintiff to execute this document, and that Plaintiff fully understands the meaning and intent of this Agreement, including but not limited to, its final and binding effect.

Settlement and Full and Final Release of Claims

12. **RIGHT TO REPRESENTATION.** Plaintiff, in receiving a copy of this Agreement, acknowledges that he has been advised in writing to seek the advice of his attorney before signing this Agreement, he has had adequate opportunity to so consult and has so consulted.

13. **LEGALLY BINDING AGREEMENT.** Plaintiff understands and acknowledge that upon Court approval of this Agreement (a) that this is a legally binding release contingent upon Court approval of this Agreement; (b) that by signing this Agreement, Plaintiff is hereafter barred from instituting claims against any of the Releasees in the manner and to the extent set forth in Paragraph 5 and Paragraph 6 above; and (c) that this Agreement is final and binding. This Agreement shall be binding upon and inure to the benefit of Defendants, Releasees, and Plaintiff, and his respective heirs, attorneys, administrators, representatives, executors, successors and assigns.

14. **CONTINUING JURISDICTION.** The Parties agree, and the Court by its approval of this Agreement agrees, that the Court shall have continuing jurisdiction to enforce the terms of this Agreement, resolve any disputes arising out of the Agreement, and supervise all payments by the Defendants of all consideration to the Plaintiff and Plaintiff's counsel. Within fifteen (15) days after the last payment made to Plaintiff's counsel by Defendants, the Parties agree to file a Notice of Stipulated Dismissal with the Court, dismissing this Lawsuit against the Defendants with prejudice. The Parties further agree to execute and/or have executed by their respective counsel, any such additional documents as may be reasonably necessary to effectuate the dismissal with prejudice of this Lawsuit against the Defendants.

15. **CONSTRUCTION.** This Agreement shall not be construed against the party preparing it but shall be construed as if all Parties jointly prepared this Agreement and any uncertainty and ambiguity shall not be interpreted against any one party.

16. **HEADINGS.** The headings or titles of the paragraphs contained herein are for guidance purposes only and have no force or effect, nor do they in any way alter the terms or meaning of this Agreement.

17. **AGREEMENT IS KNOWING AND VOLUNTARY.** Plaintiff further represents and acknowledges that none of the Releasees have made any representations, statements, promises, inducements, threats or suggestions to influence them to sign this Agreement, except those promises and other statements which are expressly set forth herein. This Agreement has been prepared in English and its English interpretation shall only apply to the Agreement and shall be binding upon the parties. Plaintiff represents and warrants that he has fully discussed this Agreement with his attorneys, has consulted with a translator of his choosing, if Plaintiff deems translation to be necessary and/or desirable, and that all terms are understood and that the execution of this Agreement is completely voluntary.

18. **ELECTRONIC SIGNATURES/COUNTER-PARTS.** Defendants and Plaintiff agree that this Agreement may be executed in counterparts, each of which shall be deemed an original, but such counterparts shall together constitute one and the same agreement. The signature and execution of this Agreement by any of the parties may be evidenced by facsimile, photocopy, or electronic transmission (including such electronic signing software such as "Docusign" ®") and such signature and execution shall be deemed to constitute the original signature of the party. Signatures may be made and delivered electronically to the fullest extent permitted under the Maryland Uniform Electronic Transactions Act, Md. Ann. Commercial Law § 21-101, et seq.

*PLEASE READ THIS DOCUMENT CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.*

**[SIGNATURES TO FOLLOW ON THE NEXT PAGE]**


| Date: 9/11/2019 | *DocuSigned by:* *Stephen Wiegmann* <br> Stephen Wiegmann |
| --- | --- |
| Date: | For: Byron's Subs, Inc., and himself, individually <br> By: *[signature]* <br> Name: Kenneth Dilda <br> Title: President |
| Date: 9/6/19 | *[signature]* <br> Name: Joseph Carolan |



PLAINTIFF'S EXHIBIT 1-A

# EMPLOYMENT AGREEMENT

This **Employment Agreement** (this "Agreement") is made effective as of the **16th day of September, 2019** (the "Effective Date") by and between Byron's Subs, Inc. t/a Casa Mia's (Employer), a Maryland corporation having its principal place of business at 8601 Honeygo Blvd, Suite B, Baltimore MD 21236, and Stephen Wiegmann ("Employee"), an individual residing in Baltimore County, Maryland.

## WITNESSETH:

**WHEREAS**, Employer operates a restaurant and catering business in Baltimore County, Maryland;

**WHEREAS**, Employer desires to employ the Employee as its Catering Manager and the Employee desires to enter into such employment, upon the terms and conditions set forth in this Agreement; and

**WHEREAS**, this Agreement shall supersede all verbal and written agreements pertaining to Employee's employment;

**NOW, THEREFORE**, in consideration of the mutual promises of the parties and the mutual benefits they shall gain by the performance thereof, all in accordance with the provisions hereinafter set forth,

1. <u>Term of Employment</u>. Subject to all provisions of this Agreement, Employee agrees to retain the employment of the Employee, and the Employee agrees to continue employment with Employer hereunder, as the Catering Manager of Employer for a period commencing on the Effective Date and terminating on the fifth anniversary of the Effective Date (the "Initial Term"). Unless Employer or the Employee has provided notice in writing to the other party of its/her intention not to extend the Initial Term no later than thirty (30) days before the end of the Initial Term, the Initial Term shall automatically be converted to at-will employment, terminable by either Employer upon 30 days' written notice. Throughout the Term, the Employee agrees to exert substantially all of the Employee's business time, attention and skill to the execution and performance of the Employee's duties and responsibilities.

2. <u>Duties and Performance During the Term</u>. Employer hereby employs the Employee as the Catering Manager of Employer to perform such exempt, executive services for Employer as are customarily performed by a person holding such a position in an organization of the size and nature of Employer, and to perform such other duties as the Employer reasonably may specify. Such services shall include, but shall not be limited to responsibility for all management and internal administrative functions of Employer's catering department, a recognized subdivision of Employer; direction of the day-to-day activities of Employer's catering department; supervising performance and directing catering staff activities; and adherence to the terms and conditions of Employer's policies, as amended, and as directed by Employer. Employee generally shall be scheduled to work from 5 a.m. to 1 p.m., subject to the legitimate business needs of the Employer.

3. <u>Termination and Dismissal</u>. During the Initial Term, Employer may terminate its obligations under this Agreement to employ the Employee only in the event: (a) of the death of the Employee; (b) if the Employee is convicted of such acts of intentional dishonesty or fraud; (c) if the Employee engages in gross insubordination; or (d) if the Employer ceases operations and no successor employer continues to operate the business. If the Employer terminates Employee for any reason not enumerated herein during the Initial Term, Employer shall remain liable for continued payment of Employee's applicable base salary on Employer's regularly scheduled pay days following the date of Employee's termination.

i. <u>No Separation benefits for breach by Employee</u>. If Employer's obligations under this Agreement are terminated for any of the reasons stated in clauses (a) through (d), Employer shall pay to the Employee any earned and payable but unpaid portion of the Employee's base salary, bonus, benefits and unreimbursed business expenses through the date of termination and shall have no further obligation to make any further payment to the Employee.

ii. <u>Severance Payment for Non-Renewal</u>. If Employer does not extend the Term of this Agreement beyond the Initial Term, Employee shall be paid severance for six months after the expiration of the Initial Term at the rate of his then-applicable base salary and existing benefits. The severance shall be paid in equal installments on Employer's regularly scheduled pay days following the date of Employee's termination.

iii. <u>Resignation by Employee</u>. If at any time the Employee wishes to voluntarily terminate the Employee's obligations under this Agreement, Employee advise Employer in writing of the effective date of Employee's resignation. In such case, Employer shall have no further obligation to pay Employee after the effective date of Employee's resignation.

4. <u>Compensation and Benefits</u>.

i. <u>Base Salary</u>. Employer shall pay the Employee a weekly salary of Nine Hundred Dollars ($900.00) in equal weekly installments. Employee affirms and agrees that his position is an exempt position under the Fair Labor Standards Act and any other state or local law. Employee's compensation shall be increased by three percent (3%) annually on the anniversary date of the Effective date.

ii. <u>Tips</u>. Employee shall be entitled to keep any tips paid to him by customers without any attending reduction or credit towards his salary.

iii. <u>Paid Time Off</u>. Each year of the Term, Employee shall be entitled to three (3) weeks' (i.e., 15 days') paid vacation time, six (6) days of sick leave (as defined by the Maryland Healthy Working Families Act) and the following holidays off: New Years' Day, Easter, Memorial Day, Independence Day, Labor Day, Thanksgiving, and Christmas, during which time the Employee's compensation shall be paid in full. Employee agrees to abide by Employer's policies and procedures related to scheduling vacation time.

iv. <u>Benefits.</u> Employee shall be eligible for all health and welfare and retirement benefits as all other employees of Employer.

5. <u>Successors</u>. This Agreement shall be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns. The Employee shall not assign any part of the Employee's rights or obligations under this Agreement. In the event of a merger, consolidation, acquisition, renaming, or reorganization involving Employer, this Agreement shall continue in force and become an obligation of Employer's successor or successors.

6. <u>Entire Agreement</u>. This document contains the entire Agreement of the parties hereto relating to Employee's employment with Employer and, as of the Effective Date, supersedes any prior employment agreements in effect by and between the parties hereto. The Agreement may not be changed orally but only by an agreement in writing signed by Employee and the owner of Employer.

7. <u>Notices</u>. All notices, requests, demands, or other communications required, permitted or contemplated by this Agreement shall be deemed effectively served, delivered or otherwise made (a) upon receipt if manually delivered, or (b) upon the delivery date shown on the returned receipt if mailed by U.S. registered or certified mail, return receipt requested, addressed to the party for whom or which intended at such party's address appearing in the first paragraph of this Agreement, until such address is changed in accordance herewith.

8. <u>Mediation.</u> If a dispute arises out of or relates to this Agreement, or the alleged breach thereof, and if the dispute is not settled through negotiation, the parties agree first to try in good faith to settle the dispute through a certified mediator selected mutually by both parties before resorting to litigation. The mediation process shall be confidential. The Employer agrees to pay all mediation fees and costs, including the legal fees of the Employee incurred during mediation.

9. <u>Governing Law</u>. Any dispute arising from or related to this Agreement or the interpretation or operation of this Agreement shall be resolved solely in Circuit Court of Maryland for Baltimore County (Towson). The Parties hereby consent to, elect, and waive any objection to the laying of personal jurisdiction and venue in such court in the event of litigation under or relating to this Agreement. This Agreement shall be interpreted under and governed by the laws of the State of Maryland.

IN WITNESS WHEREOF, Employer has caused this Agreement to be executed in this corporate name by its owner, hereunto duly authorized, and the Employee has executed this Agreement, intending to be legally bound hereby, on or as of the date first above set forth.

EMPLOYEE:

*Stephen Wiegmann* 9/10/2019
Stephen Wiegmann

BYRON'S SUBS, INC.

*[signature]*
Print name: Kenneth Dilda
Title: President

{00394392v. (16509.00001)} 3