PLAINTIFF'S
EXHIBIT
2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEPHEN WIEGMANN | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | **Case No.: 1:18-cv-1147** |
| | * | |
| BYRON'S SUBS, INC., ET AL. | * | |
| | * | |
| **Defendants.** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DECLARATION OF HOWARD B. HOFFMAN

1. I, Howard B. Hoffman, Esq., am at least 18 years of age and competent to testify, and I am not a party to, or related to a party, in this action. I serve as counsel to the Plaintiff in the above-referenced matter.

2. I am an attorney in private practice, and I concentrate on employment law. From 1999 to 2002, I practiced in two prominent boutique employment law firms representing management clients. I have been practicing law since December 1999. I am admitted to the Maryland bar (since 1999), the District of Columbia bar (since 2007), and the Virginia bar (since 2015), as well as the U.S. Court of Appeals for the Fourth Circuit, the U.S. District Court for the District of Maryland,[1] and the U.S. District Court for Eastern District of Virginia. I have extensive experience prosecuting and defending wage and hour cases and other employment law cases. I opened my own Firm in 2002. On July 1, 2018, the practice began operating as Hoffman Employment Law, LLC. I currently employ two associate attorneys, Jordan S. Liew, Esq. and Scott Kraff, Esq. Gregory B. Herbers, Esq. was formerly employed with Hoffman Employment Law, LLC.

---

[1] I gained admission to this Court in January 2000.

3. I have maintained time and costs records in this case, which I have placed into "RocketMatter"© software. The time records set forth as Exhibit 2-A are true and correct records of time entries inputted on a daily basis and are contemporaneous business records held in the ordinary course by my private law practice. The time records reflect actual time expended in the prosecution of this litigation (the "RocketMatter" entries have not been placed into the Court's required lodestar billing format). The time incurred is a reasonable amount, necessarily incurred in order to complete basic objectives in the prosecution of this matter. The time reflects the number of issues that the Defendants have or could raise as a defense in this case. I have also, to the fullest extent practical, specified the time spent per task, and I have avoided the practice of block billing.

4. Through today's date (September 11, 2019), I have incurred a minimum of 16 hours in this case at $400.00/hour (see below for basis for this claimed hourly rate), for a total value of $6,400.00. I was generally responsible for all matters and facets of this case, but principally I was involved in supervision of associate attorney work (including reviewing and revising pleadings, discovery, etc.), some client communications, and direct settlement negotiations issues. The associate attorneys whose time appears on the invoice are Jordan S. Liew, Esq, Scott Kraff, Esq., and Gregory B. Herbers, Esq. Messrs. Liew, Kraff, and Herbers drafted documents, interviewed and regularly communicated with clients, prepared wage calculations, and filed documents. Their recorded time through July 8, 2019 was 4.9 hours for Mr. Liew, 23.9 for Mr. Kraff, and 14.6 for Mr. Herbers (all at a rate of $205/hour), respectively. The total fees are $15,281.00.

5. My itemized and reimbursable listed costs in this case are $1,256.20, consisting of the filing fee, process server charges, and an expert witness fee (an expert witness prepared a

Rule 26(a) report in this case). Given the fact that this case has settled early, I have not input copy and other potentially reimbursable charges.

6. Therefore, the total fees and costs incurred to date are $16,537.20.

7. By accepting $14,000.00 for fees and cost reimbursement to Plaintiffs' FLSA claims, I am therefore discounting ("writing down") part of our time as it relates to this settlement. Notably, these fees and costs were negotiated separately and secondarily, and only after reaching a tentative resolution as to the Plaintiff's recovery.

8. In the course of representing businesses and some individuals, I include and bill to my clients any disbursements representing the same costs incurred in this case (e.g., filing fees, postage, copies, etc.).

9. I am an honors graduate of University of Maryland School of Law (May, 1999), where I was the recipient of the "Shawe & Rosenthal" employment law prize, and the "Joseph Bernstein Prize" (for excellence in legal writing). I have been a member of the Maryland bar since December 1999 and this Court since January 2000. I have been a Contributing Revisions Editor, Fair Labor Standards Act (BNA/ABA) since 2002. I was asked to speak at a seminar in December 2012, for Maryland Employment Lawyers Association titled "Bringing Your First FLSA Collective Action: The Guts and Glory Of Overtime Wage Cases." I was selected to speak at a Lorman seminar in June 2013 to discuss principles of law under the FLSA. I have received the honor of being designated a "SuperLawyer"® in employment law in both Maryland and the District of Columbia (2016-2019).

10. As stated, I have extensive experience in prosecuting and defending wage and hour lawsuits, and that makes me rather uniquely qualified to provide this Declaration. Many of the well-known reported decisions in the District of Maryland addressing overtime and

minimum wage rights, are cases that I have either prosecuted (represented the employee) or defended (represented the employer). These notable and widely cited decisions include, but are not limited to: Rose v. New Day Financial, et al., 816 F.Supp.2d 245, 2011 WL 4103276 (D. Md. Oct. 5, 2011) (Quarles, J.) (represented employer; motion to compel class-waiver arbitration granted); Chapman et al. v. Ourisman Chevrolet Co., Inc., 2011 WL 2651867 (D. Md. 2011) (Williams, J.) (representation of employee class in minimum wage dispute; summary judgment for employer denied); Williams et al. v. ezStorage Corp., 2011 WL 1539941 (D. Md. Apr. 21, 2011) (Bennett, J.) (conditional certification of FLSA collective action on behalf of employees); Gionfriddo et al. v. Jason Zink, LLC, et al., 769 F.Supp.2d 880 (D. Md. 2011) (Bennett, J.) (represented employer in FLSA case; granting motion for decertification); Dorsey et al. v. The Greene Turtle Franchising Corp., 2010 WL 3655544 (D. Md. 2010) (Blake, J.) (represented employees; grant of conditional certification of FLSA collective action); Williams et al. v. Long (d/b/a "Charm City Cupcakes"), 585 F.Supp.2d 679 (D. Md. 2008) (Grimm, J.) (represented employees; grant of conditional certification of FLSA collective action (widely cited in District)); Spencer v. Central Services, LLC, et al., Case No. CCB-10-3469, 2012 WL 142978 (D. Md. Jan. 13, 2012) (grant of attorneys' fees and costs in FLSA case); Dorsey et al. v. TGT Consulting, LLC, 888 F.Supp.2d 670, 2012 WL 3629209 (D. Md. Aug. 20, 2012) (Blake, J.) (holding employee's earning statements were insufficient to inform employees of FLSA's tip credit requirements); Saman v. LDBP, Inc., 2012 WL 5463031 (D. Md. Nov. 7, 2012) (Chasanow, J.) (dismissal of supplemental state claim of wrongful discharge in FLSA case). Several of the aforementioned decisions resulted in additional precedent setting decisions in that same case, although they are not cited here.

11. Additionally, while I would like to remain modest about my accomplishments in my nineteen (19) years of practice, two of the more frequently cited published decisions involving the First Amendment rights of law enforcement whistleblowers, decided by the U.S. Court of Appeals for the Fourth Circuit within the last decade, are cases that I prosecuted on behalf law enforcement whistleblowers, see, e.g., Andrew v. Clark, 561 F.3d 261 (4th Cir. 2009) (representation of law enforcement officer in claim of First Amendment retaliation and due process); Durham v. Jones, 737 F.3d 291 (4th Cir. 2013) (affirming judgment of judgment was obtained in the amount of $1,112,200.00 against Somerset County Sheriff; defeating claims of qualified immunity in First Amendment retaliation case).

12. Moreover, my work frequently casts me into the spotlight. By way of example, I have been quoted, or my work has been featured, in the following news articles: "Deputy Gets Powers Back," The Maryland Daily Record, Pg. 1A, Aug. 14, 2013; "Tip & Fight; Famed Baltimore Restaurant Sip & Bite on the Hook for Unfair Labor Practices," Baltimore City Paper ("Mobtown Beat column"), Aug. 21, 2013; "Sheriff Owes Deputy $1.1M," The Maryland Daily Record, Pg. 1A, December 11, 2013; "Pet Peeve – Outcry Over Baltimore County Animal Shelter Erupts in Free-Speech Lawsuit," Baltimore City Paper ("Mobtown Beat column"), June 4, 2014; "State Courts Can Decide Overtime Disputes, Enhance Damages," The Maryland Daily Record, Pg. 1A, Aug. 18, 2014. My Section 1983 work on behalf of animal advocates in Baltimore County, Fancy Cats Rescue Team, Inc., et al. v. Baltimore County, Md., et al., BPG 14-1073, gained nationwide attention. See http://www.chicagotribune.com/lifestyles/pets/ct-pets-shelter-silence-0129-20150129-story.html ("Bredar's decision could have implications around the country.")

13. I have not charged (and will not charge) Plaintiff for any of the costs or fees that have been incurred in this case.  No contingency fee is being charged to Plaintiff.

14. I believe that the settlement in this case, while unorthodox, represents a fair and reasonable resolution – for all sides – in this FLSA case.  The Plaintiff was a long-time employee of Defendants, and he lost his job through no fault of his own (and there was no indication that the Defendant unlawfully terminated him).  The Plaintiff has been unemployed since he lost his job, nearly one year ago.  The parties themselves communicated and negotiated a resolution whereby the Plaintiff would return to work, in a salaried position as manager, for a guaranteed term, with other valuable terms.  Once the parties agreed that the Plaintiff would return to work in exchange for dropping his wage/hour demands (which were valued at $36,611.25, with liquidated damages), myself and my associates went about negotiating an employment agreement providing employment security and other terms that the Plaintiff would not have otherwise been entitled to receive.  For example, the Plaintiff cannot be terminated within five years of employment (except for limited reasons involving gross misconduct), and if after five years the Plaintiff's term of employment ends, then the Plaintiff is entitled to a six-month severance.  That severance alone would be $23,400.00, more than the value of the Plaintiff's compensatory damages alone.

15. More importantly, this is what the Plaintiff **wanted**.  He was agreeable to return to his employment per the terms of a valuable employment agreement he would not have otherwise been entitled to receive.  Presumably, the Defendants saw value in restoring the Plaintiff to his employment.  Therefore, this agreement – while certainly unorthodox – does contain value for the Plaintiff, and perhaps I dare say, may be more valuable to the Plaintiff then if the Plaintiff had just received his unpaid overtime.  While it is not my practice to

engage in negotiations such as this, it was the parties who ultimately agreed on the general terms, and the undersigned worked to further secure the Plaintiff's "benefit of the bargain." This was a very unique set of circumstances and a settlement like this was viewed by all parties as desirable. I do not believe that the Defendants would have restored the Plaintiff to his prior position, with a guaranteed employment term, in the absence of a settlement in this case. Even after the general framework of a settlement appeared, there was still considerable "back and forth" on the terms of an employment agreement. Therefore, the Defendants have provided the Plaintiff considerable value in exchange for this settlement. Under the very specific facts of this case, I believe that this settlement is a fair and reasonable resolution of this FLSA case.

16. Before I began my <u>nineteenth</u> year of practice, I received an award of $400/hour in <u>Jackson et al. v. Egira, LLC, et al.</u>, RDB 14-3114, 2016 WL 5815850 (D. Md. Oct. 5, 2016).

17. I am requesting that the Court value my time at a rate of $400.00 an hour in this case, *although the effective hourly rate is lower as I have discounted our legal fees and costs in the interest of settlement.* This rate is consistent with the revised Lodestar Guidelines adopted by the U.S. District Court, especially for an attorney who regularly handles precedent-setting decisions, whose work attracts and receives media attention, and who regularly speaks on employment law topics, including to fellow attorneys.

18. Additionally, I am requesting that the Court value the time of my associates Messrs. Kraff and Herbers at an hourly rate of $205/hour, and value the time of Mr. Liew at $205/hour for all time prior to July 1, 2019 and $215/hour for all time after July 1, 2019. These rates are consistent with the revised Lodestar Guidelines adopted by the U.S. District Court. Messr. Liew and Kraff's education and work experiences are outlined in their respective

Declarations.  Mr. Herbers' resume (available upon request) indicates that he has practiced law since 2015, after graduating from Pepperdine University School of Law, and he was admitted to the Maryland bar in December 2018 and the California bar in 2015.  I believe that the market rate assigned to Messrs. Liew, Kraff and Herbers is also very appropriate, given my own review of associate time in other cases in which I have defended.  I believe that Mr. Liew's $215/hour rate is appropriate, as he had over one year of experience in this Law Firm.  At this point, Mr. Liew has acquired advanced knowledge and understanding of the FLSA and litigation generally, and he is performing work more independently and very efficiently.  Therefore, I believe that Mr. Liew is more akin to a mid-level associate in a management-side practice and should be appropriately valued as such.  I am satisfied with the level of delegation of attorney work to associate attorneys in this case, which served to keep fees/costs to a minimum.

**DECLARANT FURTHER SAYETH NAUGHT**

I solemnly affirm under the penalties of perjury that the contents of the foregoing are true and correct.

Howard B. Hoffman, Esq.
September 11, 2019